# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**COURTNEY DAVIS (#558930)**                                              **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                                   **NO. 15-0308-BAJ-EWD**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on August 17, 2018.

                                             **ERIN WILDER-DOOMES**
                                             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**COURTNEY DAVIS (#558930)**                           **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                  **NO. 15-0308-BAJ-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the application of Petitioner Courtney Davis for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

### I. Procedural History

On May 7, 2007, pursuant to grand jury indictment returned in the Twentieth Judicial District Court for the Parish of East Feliciana, State of Louisiana, Petitioner was charged with one count of second-degree murder. After a trial by jury commenced in April 2007, the jury found Petitioner guilty of the charged offense. Upon the denial of post-trial motions, the trial judge sentenced Petitioner on September 29, 2009 to life imprisonment, without the benefit of probation, parole or suspension of sentence.

Petitioner pursued a direct appeal, arguing that the trial court erred in denying his motion to suppress statements made by him after his arrest. On September 10, 2010, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's conviction and sentence. *State v. Davis*, 46 So.3d 284, 2010 WL 3527546 (La. App. 1 Cir. 2010). Petitioner thereafter sought further review before the Louisiana Supreme Court, which Court denied review without comment on March 4, 2011. *See State v. Davis*, 58 So.3d 475 (La. 2011).[1] Upon the failure of Petitioner to thereafter file an application for

---

1   Petitioner's PCR application filed in state court in April 2013 states that he did not proceed

a writ of certiorari in the United States Supreme Court, his conviction and sentence became final on June 2, 2011 after expiration of the ninety-day period allowed for him to do so. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (recognizing that a conviction becomes final for federal purposes after the 90-day period allowed for a petitioner to proceed in the United States Supreme Court if he has not pursued such relief).

On or about September 29, 2011, Petitioner filed a counseled application for post-conviction relief ("PCR") in the state trial court.[2] Petitioner asserted therein that his constitutional rights were violated by the use of statements and consents obtained during questioning by police in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), and that the State failed to meet its burden of proof in rebutting his assertion of self-defense.[3] On the same date, Petitioner's attorneys filed a motion for leave of court to file a supplemental application, which motion was granted, with the supplemental application being filed on October 3, 2011, asserting essentially the same claims. Notwithstanding, the state district judge issued an Order on October 5, 2011, noting that both the original and supplemental applications were procedurally deficient and directing Petitioner to resubmit his application in proper form within thirty days, including without limitation the use of Louisiana's Uniform Application for Post Conviction Relief. It appears from the record, however, that neither Petitioner nor his attorneys complied with this directive. Whereas Petitioner subsequently filed, on or

---

before the Louisiana Supreme Court in connection with his direct appeal. In contrast, in Petitioner's habeas corpus application before this Court, Petitioner asserts that he did so proceed and that the Louisiana Supreme Court denied review on March 4, 2011.

2   Petitioner has since retained separate counsel to represent him in connection with the instant federal habeas corpus application.

3   The claims asserted in Petitioner's initial and supplemental PCR applications are somewhat jumbled and repetitive but may be summarized as asserting the two claims as stated above. With regard to Petitioner's claim relative to the admission of his inculpatory statements after arrest, Petitioner asserted variously that the arresting officers did not initially provide him with a correct statement of his *Miranda* rights, that injuries he received prior to or during his arrest deprived him of the capacity to knowingly and intelligently waive those rights, and that investigating officers continued to interrogate him after he later attempted to invoke his *Miranda* rights.

about October 17, 2011, a *pro se* motion seeking leave to supplement his PCR application and add a claim relative to the alleged violation of his Sixth Amendment right to counsel, the district court denied Petitioner's request on October 27, 2011.[4]

It appears that Petitioner's procedurally deficient PCR applications subsequently sat dormant in the district court for an extended period of time, with no service being made upon the State and no action being taken by Petitioner, his attorneys, or the state court. It was not until more than a year later, on February 11, 2013 that Petitioner's attorneys, through the filing of a Motion for Status Conference, sought to move the case forward. It appears that a status conference was subsequently scheduled, at which time the district court again directed Petitioner to file a supplemental application utilizing the state's Uniform Application for Post Conviction Relief and directed the State to respond thereto. Upon the filing of Petitioner's new PCR application on April 25, 2013, which included the original and several new claims,[5] the State filed a procedural objection in response thereto, contending that Petitioner's new application was untimely under state law, having been filed more than two years after the finality of Plaintiff's conviction. Notwithstanding, the district court overruled the State's objection, concluding that the pendency of Petitioner's original 2011 application was sufficient to overcome the objection. The district court then ordered the State to file a substantive response to Petitioner's claims and, after consideration of that response, denied Petitioner's PCR application on the merits on July 18, 2013.

The record reflects that Petitioner thereafter pursued further review by filing applications for supervisory review before both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court, which courts denied review without comment on January 8, 2014 and December 8, 2014,

---

4    From a review of Petitioner's proposed supplemental PCR application, it does not appear that this *pro se* application would have fixed the deficiencies noted by the trial court.
5    The new claims asserted in Petitioner's 2013 supplemental PCR application included claims of ineffective assistance of counsel and claims relative to the alleged violation of his Eighth Amendment right to humane treatment.

respectively. *See State v. Davis*, 153 So.3d 431 (La. 2014).

Finally, Petitioner submitted his federal habeas corpus application for filing herein on or about May 15, 2015. Petitioner asserts the following grounds for relief:

| | |
|---|---|
| Ground One: | His conviction was obtained in violation of his Fifth Amendment rights when arresting officers (1) initially failed to fully and adequately advise him of his rights pursuant to *Miranda v. Arizona, supra*, (2) withheld medical treatment during the ensuing interrogation, and (3) continued to interrogate him after he attempted to invoke his right to remain silent; |
| Ground Two: | He was denied his Eighth Amendment right to humane treatment when arresting officers utilized excessive force during his arrest and withheld medical treatment for a period of time thereafter; |
| Ground Three: | He was denied his Sixth Amendment right to the effective assistance of counsel in several respects; and |
| Ground Four: | He was denied his Fourteenth Amendment right to due process of law when the State was permitted to introduce at trial evidence of his "coerced and involuntary confession" and when the State failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense. |

## II. Factual Summary

The facts, as summarized in the opinion of the Louisiana Court of Appeal for the First Circuit, are as follows:

> During the early afternoon hours of September 8, 2007, Sheila Flowers was inside her residence on Johnson Street in Clinton, Louisiana, when she heard two gunshots outside. When she ran to her kitchen door to try to determine the source of the noise, Ms. Flowers saw the defendant standing outside with a gun in hand. According to Ms. Flowers, she asked the defendant what he was doing and he responded by firing a third gunshot into the air. Ms. Flowers immediately contacted 911. Moments later, as Ms. Flowers exited the front door of her residence, she saw the defendant walking down the street with the gun in his hand. The defendant stated, "[h]e deserved it".

When law enforcement officials arrived at Ms. Flowers's residence, they found the lifeless body of the victim, Johnny Lee Sanders, lying face down on the ground in the backyard. Thus, officials began a homicide investigation.

In connection with the investigation, Clinton Police Officer Craig Betrece went to the defendant's residence and spoke with the defendant's sister. Officer Betrece was personally acquainted with the defendant's family. The defendant's sister contacted the defendant on his cellular phone and handed the phone to Officer Betrece. Betrece spoke briefly with the defendant, but without ever advising him of his rights. According to Betrece, the defendant stated that "he had shot a man who had pulled a knife on him." The defendant then terminated the telephone call without providing any additional information.

Approximately one and one-half hours after the shooting, Lieutenant Troy Abshire of the Clinton Police Department was advised, via dispatch, that the defendant had been located at a nearby residence. Todd Collins had discovered the defendant hiding inside a storage shed at his residence. Collins had hit the defendant over the head with a shovel, locked him inside the shed, and contacted the police.

Once Lieutenant Abshire arrived at the residence, he opened the shed and found the defendant sitting in a chair. The defendant was immediately apprehended and orally advised of his *Miranda* rights. Later, as he was being placed inside the police vehicle, the defendant stated that he was the person who shot the victim. The defendant was transported to the East Feliciana Parish Sheriff's Office (parish jail), where he was again advised of his *Miranda* rights. This time, Lieutenant Abshire used a written rights form. Lieutenant Abshire signed the form, verifying that he had advised the defendant of his rights. The defendant also signed the form, acknowledging that he had been advised of his rights and that he understood them. The defendant did not initial the portion of the form regarding the waiver of his rights. Next to item number 3, which provides, "I am willing to answer questions and make a statement[,]" the defendant marked over what appeared to have been his initials.

Later, while still in custody, the defendant was questioned by Don McKey and Terrance Miller, officers with the East Feliciana Parish Sheriff's Office, and Al Burns, an officer with the Clinton Police Department. The defendant was again advised of his *Miranda*

rights at this time. After agreeing to waive his rights and to make a statement, the defendant executed another written rights waiver form and then gave an audio-recorded confession. In the statement, the defendant again admitted that he shot the victim, but he claimed he did so in self-defense after the victim pulled a knife on him.

Prior to the trial of this matter, the defendant moved to suppress all statements. After a hearing, the court granted the motion to suppress as to the statement made to Officer Betrece over the phone, but denied the motion as to the defendant's statements to Lieutenant Abshire and the audiotaped statement during the interrogation at the jail.

*See State v. Davis, supra*, 2010 WL 3527546 at *1-2.

Based upon the foregoing, the jury returned a verdict finding Petitioner guilty of the charged offense.

### III. Procedural Defense Of Untimeliness Raised By The State

The State contends that Petitioner's application before this Court is untimely. In this regard, pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a subsequent properly-filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are not any properly-filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. *Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir. 1998). *See also Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the state's applicable laws and procedural rules governing

filings.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a state application is seen to be "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state consideration.  *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In support of the assertion of untimeliness, the State contends that Petitioner's initial and first supplemental PCR applications, filed in September and October 2011, were procedurally deficient and so did not interrupt the running of the federal limitations period because they were not "properly filed." The State contends that as a result, a period of more than a year elapsed before Petitioner filed a properly completed application for post-conviction relief in April 2013.

In the Court's view, the State's argument appears to have merit.  Pursuant to La. Code Crim. P. art. 926, an application for post-conviction relief is required, *inter alia,* to be submitted using Louisiana's Uniform Application for Post Conviction Relief, and it must include the petitioner's affidavit attesting that the allegations contained therein are true and correct.  In this case, Petitioner's initial application filed on September 29, 2011 did not comply with these requirements.  Thus, although Petitioner filed this PCR application prior to the expiration of the one-year federal limitations period, it was not in proper form and so did not toll the limitations period.  Whereas Petitioner sought and was granted leave to file a supplemental PCR application, which application was filed on October 3, 2011, that application also was not in proper form and suffered from the same deficiencies. Recognizing that the applications were deficient, the state district court issued an Order on October 5, 2011, explicitly advising Petitioner that his applications "fail[] to comply with the provisions of Louisiana Code of Criminal Procedure Article 926."  The Court's Order further directed Petitioner, within thirty (30) days, to "amend his application to comply with the provisions of Article 926 … including, without limitation, use of the Uniform Application for Post Conviction."  As noted above,

neither Petitioner nor his attorneys complied with this directive, and they did not correct the referenced deficiencies until the filing, in April 2013, more than a year later, of a second supplemental PCR application that was notarized and submitted on the required Uniform Application.

Based on the foregoing, it appears that Petitioner should not be given tolling credit for the 1½-year period during which his initial and first supplemental PCR applications were pending but not properly filed before the state district court.  *See Larry v. Dretke*, 361 F.3d 890, 895 (5th Cir. 2004) (*citing Artuz v. Bennett*, *supra*, and recognizing that a post-conviction relief application may be pending but not properly filed and that statutory tolling will not then apply).  This conclusion is consistent with determinations made by other federal courts that have addressed this issue in the context of non-compliance with La. Code Crim. P. art. 926.  In *Washington v. Rader*, 2012 WL 2236746 (E.D. La. May 14, 2012), for example, the Court concluded that Petitioner was not entitled to tolling credit for an application that was not filed on the Uniform Application as mandated by article 926.  The Court reiterated that, for tolling of the limitations period to apply, a post-conviction relief application must be "properly filed," and the United States Supreme Court has concluded that this occurs "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Id., quoting Artuz v. Bennett, supra.*  Further, these "applicable laws and rules governing filings" have been recognized to include those rules that prescribe, for example, "the *form of the document."  Id.* (emphasis added by the *Washington* Court).  The *Washington* Court went on to find that, "[b]ecause petitioner failed to comply with a filing condition, *i.e.* use of the required uniform application form, the motion was … not 'properly filed' and therefore … did not toll the federal limitations period."  *Id*. *See also Alexander v. Cain*, 2007 WL 121733 (E.D. La. Jan. 12, 2007) (denying tolling credit to a petitioner who, despite using the uniform application, failed to complete it properly because he did not provide a notarized affidavit as required by article 926):

> Alexander mailed a Uniform Application for Post Conviction Relief to the Trial Court

> on February 13, 2002.  That Application was not properly filed.  On February 22, 2002, the Trial Court ruled that the pleading failed to comply with the filing requirements set [forth in] La. Code Crim. P. art. 926(C) because Alexander failed to complete the affidavit on page seven of the form.  The United States Supreme Court has held that a pleading is not "properly filed" within the meaning of § 2244(d)(2) unless the petitioner has complied with all of the States' procedural filing requirements.  *Pace* [*v. DiGuglielmo*, *supra*], 544 U.S. at 413-14.  Alexander is not entitled to statutory tolling for this filing.

*Id.*, 2007 WL 121733 at *5.  *See also Austin v. Carroll*, 224 Fed. Appx. 161, 163-64 (3rd Cir. 2007) (denying tolling credit to a petitioner who failed to submit his application on the required form and allowing tolling only for the period *after* he completed the form in compliance with the court's directive to re-submit the application – finding no basis for relation back to the original filing date).[6]

The sole decision discovered by this Court that arguably supports a different result is easily distinguished from the instant case.  In *Buras v. Cain*, 2016 WL 6477039 (E.D. La. May 5, 2016), the *pro se* petitioner submitted a PCR application to the state district court that did not include the affidavit required by La. Code Crim. P. art 926.  Pursuant to a letter dated December 7, 2012, the Court notified the petitioner of the deficiency, and the petitioner thereafter promptly resubmitted his application in proper form on December 18, 2012.  The federal habeas court was later faced with the question whether the petitioner's first PCR application was sufficient to toll the limitations period because whereas his first application was timely, his second application, filed ten days later, was submitted outside of the one-year federal limitations period.  In ultimately declining to find that the petitioner's

---

6   Whereas the state district court in this case did not dismiss Petitioner's initial 2011 PCR applications outright as procedurally deficient and instead allowed the applications to remain dormant for an extended period of time, and whereas the state court later accepted Petitioner's corrected application filed in April 2013 without discussion, this Court does not find this detail to be significant or to compel a conclusion that the initial applications were "properly filed."  The state court made explicitly clear to Petitioner's then-attorneys that the initial applications were procedurally deficient and would not be considered by the court, and their continued pendency did not render them "properly filed."  *Cf.*, *Edwards v. Cockrell*, 2003 WL 21321231 (N.D. Tex. June 5, 2003), *affirmed*, 116 Fed. Appx. 470 (5th Cir. 2004) (concluding that a procedurally deficient state court PCR application had not been "properly filed" and had not tolled the limitations period even though the state district court had accepted and substantively considered it without addressing the procedural deficiency).

first PCR application was not properly filed, the Court focused upon the equitable factors present in that case. Specifically, the Court noted that the *pro se* petitioner explicitly asserted that he had attempted to have his initial application notarized, but the prison notary had failed to comply and had instead forwarded the application to the state court without the required affidavit. The Court further noted that, as an incarcerated person, the petitioner presumably had little to no control over the actions of the prison notary and, when notified by the state court of the referenced deficiency, acted diligently to correct same within a short period of time. Thus, based on the facts of that case, the *Buras* Court was "hesitant" to follow the recognized decisions that had withheld tolling credit for un-sworn and non-compliant PCR applications and/or those submitted on improper forms. *Citing Cooley v. Cain*, 2012 WL 893417, *3 (E.D. La. Feb. 6, 2012), and *Austin v. Carrol, supra*, 224 Fed. Appx. at 163-64. Finally, the Court noted, in the alternative, that even were it determined to be in error and to have been "overly generous" in awarding tolling credit to the petitioner's first PCR application, the petitioner was nonetheless arguably entitled to equitable tolling of the limitations period because of the misconduct of the prison notary, thereby achieving the same result. *See Buras v. Cain, supra*, at n. 18.

In the instant case, Petitioner's initial and first supplemental PCR applications were both clearly in improper form because they were not submitted on Louisiana's Uniform Application for Post Conviction Relief and did not include an affidavit executed by Petitioner attesting to the truth of the statements contained therein. Accordingly, the applications were clearly non-compliant with the requirements set forth in La. Code. Crim. P. art. 926. Petitioner's attorneys at the time were specifically notified regarding these procedural deficiencies pursuant to an Order of the state court dated October 5, 2011, at which time Petitioner's then-attorneys were directed to resubmit Petitioner's application in proper form within thirty days. Petitioner's attorneys failed to comply with this directive and did not correct the procedural deficiencies until more than a year later in April 2013. In contrast to the situation presented in the *Buras* case, *supra*, Petitioner in this case was represented by

counsel and so was not similarly limited in his ability to submit a sworn affidavit in connection with his application. Specifically, even if his attorneys were not themselves notaries, they had substantial time remaining on the one-year time clock at that time and could certainly have visited the Petitioner's facility with an accompanying notary and obtained the required signatures. Further, the year-and-a-half delay that elapsed after Petitioner's attorneys (1) were explicitly advised of the procedural deficiencies in the initial PCR applications and (2) were directed to correct same within thirty days, are not indicative of reasonable diligence in responding to the deficiency notice. On this showing, therefore, Petitioner is not entitled to statutory tolling during the period that his initial and first supplemental PCR applications were pending before the state trial court and, as addressed below, he has not shown that he is entitled to equitable tolling of the limitations period. Accordingly, his federal habeas corpus application before this Court is untimely.[7]

Having found Petitioner's application to be untimely, this Court must dismiss same pursuant to 28 U.S.C. § 2244(d) unless Petitioner can establish either that he is entitled to statutory tolling of the limitations period under § 2244(d)(1)(B) – because there was a state-created impediment to timely filing – or that he is entitled to equitable tolling.

---

7    In addition to the foregoing, this Court independently finds to be untimely the new claims asserted in Petitioner's second supplemental PCR application in 2013, which claims are also sought to be asserted in this federal habeas corpus proceeding. These claims, of the alleged ineffective assistance of his trial counsel and of the alleged violation of his Eighth Amendment right to humane treatment, were not presented in Petitioner's initial and first supplemental PCR applications. To the contrary, these claims did not appear until the filing of Petitioner's second supplemental application in April 2013, well more than a year after the finality of Petitioner's conviction. There is no basis for a finding that these claims should relate back to the filing of Petitioner's initial applications. *See Austin v. Carrol, supra*, 224 Fed. Appx. at 163-64 (declining to find that claims asserted in an untimely post-conviction application related back to the date of an earlier filing). In addition, the United States Supreme Court has held that new but untimely claims asserted in an amendment to an existing federal habeas corpus proceeding will not relate back to the filing of the original application if the amendment asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (finding that "[a]n amended habeas petition ... does not relate back (and thereby escape [the statutory] one-year time limit) when it asserts a new ground for relief" which does not meet this criteria).

To establish entitlement to statutory tolling under 28 U.S.C. § 2244(d)(1)(B), Petitioner must show that some state action, in violation of the Constitution or federal law, prevented him from filing a timely petition. *See Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). Petitioner has made no such showing in this case. Accordingly, there is no legal or factual basis in the record for a finding that Petitioner is entitled to statutory tolling under this section.

Nor is there any basis in the record for equitable tolling in this case. In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances," *see United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000), and the burden is on Petitioner to establish that equitable tolling is warranted. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance has stood in his way. *Pace v. DeGuglielmo, supra*, 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library, are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the denial thereof by the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010).

"The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649-50.  Whereas egregious and extraordinary misconduct by a post-conviction attorney may in certain circumstances warrant equitable tolling, a "garden variety claim of excusable neglect" does not rise to this level. *Id*. at 651.

Based on the foregoing recitation, this Court concludes that Petitioner has not met his burden of proof in establishing his entitlement to equitable tolling in this case.  The Fifth Circuit has determined that equitable tolling is not warranted where a petitioner's state habeas petition is non-compliant due to a failure to comply with state procedural rules.  *Jones v. Stephens*, 541 Fed. Appx. 499, 504 (5th Cir. 2013).  Where a petitioner has failed to comply with the state's rules, it is the petitioner's own actions, rather than the state's actions, that have caused the untimeliness of his petition. *Id*.  *See also Larry v. Dretke*, *supra*.  In addition, to constitute an extraordinary circumstance based upon the actions of post-conviction counsel, the behavior must be egregious and extraordinary.  *See Henderson v. Thaler*, 626 F.3d 773, 778 (5th Cir. 2010).  It cannot be "garden variety" behavior that amounts to ordinary misconduct or neglect on the part of the attorney.  *Id*.  *See also Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel").  Ineffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during a post-conviction collateral attack upon a criminal conviction. *United States v. Petty*, 530 F.3d 31, 366 (5th Cir. 2008).  Further, even a petitioner who is represented by incompetent counsel is required to exercise due diligence in pursuing his rights.  *See Manning v. Epps*, 688 F.3d 177, 184-85 (5th Cir. 2012).  In those cases where attorney misconduct has been found to even approach being sufficiently egregious to potentially warrant equitable tolling, the conduct has

involved "far more serious instances of attorney misconduct" than mere attorney error or neglect, as where the attorney has abandoned the petitioner entirely, has falsely and repeatedly misrepresented that a timely petition has been filed, and/or has ignored numerous attempts at contacting the attorney by telephone and correspondence over a long period of time. *See, e.g., Holland v. Florida*, *supra*, 560 U.S. at 652-53 (concluding that equitable tolling may apply where a petitioner has been actively misled or abandoned by his attorney, but that mere attorney negligence does not suffice). Further, even when a petitioner's attorney has engaged in active misrepresentation, such conduct may be seen to warrant equitable tolling only if a petitioner has reasonably relied upon the misrepresentation to his detriment. *See Hailey v. Stephens*, 532 Fed. Appx. 571, 573 (5th Cir. 2013) (finding no egregious conduct sufficient to warrant equitable tolling where the petitioner identified no deceptive misrepresentation before the expiration of the limitations period and noting that only misrepresentations occurring before the conclusion of the limitations period "would be relevant because anything that happened after the limitation period had expired could not have 'stood in [the] way' of a timely filing").

Applying the foregoing principles, the Court concludes that the actions of Petitioner's initial PCR attorneys in this case fail to rise to the level of rare, egregious and exceptional circumstances that justify the application of equitable tolling. Petitioner's then-attorneys filed a timely PCR application on Petitioner's behalf in September 2011 and subsequently obtained leave to file a supplemental application shortly thereafter in October 2011. Whereas the noted procedural deficiencies in the initial PCR applications caused Petitioner's applications to be not properly filed in the state court for purposes of statutory tolling, this lapse appears to be attributable to mere "garden variety" negligence and not to any rare and egregious misconduct on the part of Petitioner's attorneys. Specifically, at no time thereafter has it been shown that Petitioner's then-attorneys abandoned the post-conviction process or actively and intentionally misrepresented to Petitioner the course thereof. Whereas,

through inaction, the PCR application sat dormant for a period of time, Petitioner's attorneys thereafter re-commenced the proceedings through the filing of a request for a status conference, and the matter then proceeded to conclusion before the state court. Moreover, Petitioner has failed to show or assert that during the referenced period of inactivity, he actively sought to communicate with his attorneys or to learn the status of the proceedings. In both *Holland v. Florida, supra*, and in *Maples v. Thomas*, 565 U.S. 266 (2012), the Supreme Court focused upon the petitioner's assertion that he had effectively been abandoned by his post-conviction attorneys, leaving him unrepresented, and concluded that such abandonment could constitute egregious misconduct that warranted the application of equitable tolling or that constituted "cause" for purposes of overcoming a state procedural default. As the Court noted in *Maples*, however, absent abandonment, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' … because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Id*. at 280.

Accordingly, based on the foregoing, the Court finds in the instant case, that Petitioner has failed to show such exceptional circumstances as would entitle him to equitable tolling in this case.[8] Accordingly, his untimely application for habeas corpus relief should be dismissed.

---

8   Moreover, the record does not reflect that Petitioner has shown that he has acted with sufficient diligence in pursuing his habeas corpus claims. Specifically, he has made no assertion that he attempted to contact his attorneys after the filing of his initial PCR applications in 2011 to ascertain the status thereof. Further, upon the conclusion of his state PCR proceedings, through denial of his writ applications by the Louisiana Supreme Court on December 8, 2014, Petitioner then waited more than five months, until May 15, 2015, to file the instant federal habeas corpus proceeding. This delay is further evidence of a failure to act diligently and with alacrity in pursuing his federal rights. *See Baker v. Cain*, 2008 WL 3243993, *3 (5th Cir. 2008) (diligence not shown where the petitioner "waited approximately four months to file a federal petition after the Louisiana Supreme Court denied relief"); *Kelly v. Quarterman*, 260 Fed. Appx. 629 (5th Cir. 2007) (same, with four-month delay); *Melancon v Kaylo, supra*, 259 F.3d at 408 (same, with four-month delay). Accordingly, Petitioner has failed to show such diligent conduct as would warrant equitable tolling in connection with his habeas corpus application.

Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus be denied and that this proceeding be dismissed, with prejudice. It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on August 17, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**